UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

SENEN SUAREZ

05 10758 RWZ

CRIMINAL NO.: 03-10384-RWZ

MAGISTRATE JUDGE _____

MOTION UNDER 28 USC SEC 2255 TO VACATE AND SET ASIDE SENTENCE

Now comes the Defendant, presently imprisoned at FMC Devens, Ayer, Massachusetts, and respectfully moves that this Court vacate and set aside his sentence in this case and resentence him taking into account the Supreme Court decision of US v. Booker, 125 S. Ct. 738 and US v. Heldeman (1st Cir 3/29/05), because it is submitted that this Court might well have given a different sentence if the advisory guideline regime had been in force, as can be seen from the Court's comments at sentencing (transcript of sentencing attached hereto).

The relevant information pertaining to the case is as follows:

1) The Defendant was sentenced on August 17, 2004 by this Court;

2) The sentence was to a term of imprisonment for 70 months and supervised release of three years;

3) The nature of the offense was two counts of Possession with Intent to Distribute Cocaine under 21 USC Sec. 841(a)(1);

4) The Defendant pleaded guilty to both Counts;

5) The Defendant has filed no previous Motions for this relief.

As grounds for this Motion the Defendant reiterates that this Court expressed her opinion that if she were not bound by the sentencing guidelines she "would not have to impose a sentence that I frankly regard as high".

WHEREFORE, movant prays that the Court grant him all relief to which he may be entitled in this proceeding and requests a hearing.

_____
Michael A. Paris, attorney for
Defendant,
BBO no. 389220
77 Franklin Street
Boston, MA 02110
617-542-5000

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the Attorney of record for each other party by mail (by hand)
On_____
_____

AUG17SUA.txt

1

1 UNITED STATES DISTRICT COURT
2 DISTRICT OF MASSACHUSETTS
3 No. 03-cr-10384-RWZ-ALL
4
5
  UNITED STATES OF AMERICA
6
7 vs.
8
  SENEN SUAREZ
9
10
11                         *********
12
13         For Sentencing Hearing Before:
          Honorable Rya W. Zobel
14
15
          United States District Court
16             District of Massachusetts (Boston.)
          One Courthouse Way
17          Boston, Massachusetts 02210
          Tuesday, August 17, 2004
18
19
20                         ********
21
        REPORTER: RICHARD H. ROMANOW, RPR
22           Official Court Reporter
         United States District Court
23 One Courthouse Way, Room 3507, Boston, MA 02210
            (617) 737-0370
24
25

                                              2
1        A P P E A R A N C E S
2
  WILLIAM D. WEINREB, ESQ.
3     United States Attorney's Office
    1 Courthouse Way, Suite 9200
4     Boston, MA 02210
    (617) 748-3222

```
                              AUG17SUA.txt
 5        Email: William.weinreb@usdoj.gov
          For the United States of America
 6

 7   MICHAEL A. PARIS, ESQ.
        77 Franklin Street
 8      Boston, MA 02210
        (617) 542-5000
 9      Email: Maparis@yahoo.com
        For the Defendant
10

11   ALSO PRESENT:
        Mr. Haddad, court interpreter.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                      3
 1              P R O C E E D I N G S
 2              (Begins 2:30 p.m.)
 3              THE CLERK:  This is the United States versus Senen
 4   Suarez, Criminal Action 03-10384.  If counsel would please
 5   identify themselves for the record.
 6              MR. WEINREB:  Good afternoon, your Honor.  William
 7   Weinreb for the United States.
 8              MR. PARIS:  Michael Paris for the defendant.
 9              THE COURT:  Good afternoon.
                              Page 2
```

AUG17SUA.txt

10      THE CLERK: And if I could just swear in the
11 interpreter, please.
12          (INTERPRETER, sworn.)
13      THE COURT: Please be seated. Now, the only
14 objection filed by the defendant has been corrected by
15 Probation, so I think I needn't address the objections any
16 further. Correct?
17      MR. PARIS: Yes, correct.
18      THE COURT: And the Government had no objections.
19 What the Probation officer computed was a base offense level of
20 34 based on drug quantities from Government reports, as I
21 understand it. Now, first of all, is there an issue about the
22 safety valve?
23      MR. WEINREB: There's no issue, your Honor. The
24 defendant did give a truthful proffer and both parties agree
25 that this qualifies for it.

                                                                4
1       THE COURT: And does the Government agree to the
2 third point for acceptance of responsibility?
3       MR. WEINREB: It does, your Honor.
4       THE COURT: Then the only question is the amount,
5 right?
6       MR. WEINREB: If there is a question. It's the
7 Government's position that at the -- during the Rule 11
8 colloquy, the defendant admitted the amount. And this is not a
9 complicated case.
10      THE COURT: He admitted to more than 50 grams.
11      MR. WEINREB: No, I think it went beyond that. The
12 Government recited that there had been two sales and what the
13 amounts had been at each sale, and the Court asked the
14 defendant if that was true and he said it was.

AUG17SUA.txt

15        THE COURT: I don't remember that.

16        MR. PARIS: No, my recollection was that he
17 admitted to more than 50 grams. I don't remember the amount.
18 I think he may be right, but I don't remember that. I thought
19 he just admitted to the indictment.

20        THE COURT: Well, I mean, I'm certainly prepared to
21 agree that it's more than 50 grams per count, in which case
22 what we're talking about is between 100 and 250 or whatever the
23 range is, which would give us a total offense level of 32.

24        MR. WEINREB: I don't think there's ever been a --
25 there was never, in this case, a dispute about the amount. But

                                                                                                                 5

1 you're talking about two sales. And so I don't think there
2 would be any controversy. When I recited the facts, I remember
3 stating what the amounts were for each sale. I know that the
4 Court asked the defendant.

5        THE COURT: In grams?

6        MR. WEINREB: In grams. I stated exactly what they
7 were.

8        THE COURT: I have no recollection of that.

9        MR. WEINREB: Because I was reading from the
10 document that included that information.

11        THE COURT: But my normal practice would have been
12 to ask the defendant what he did, to tell me in his own words
13 what he did. I have no recollection of him telling me that he
14 peddled so many grams.

15        MR. WEINREB: I don't remember his exact words. I
16 don't remember him saying that -- I believe he said what
17 defendants often say in this situation which was, you know,
18 that "I did it. I sold drugs."

19        THE COURT: Well, why don't we agree that it's more

AUG17SUA.txt

```
20   than 50 grams on each count?
21             MR. WEINREB:  I'm sorry?
22             THE COURT:  We'll agree it's more than 50 grams on
23   each count.  So that we have a starting offense level of 32,
24   minus the 3, would make it 29.  Right?  And with the safety
25   valve, would give us a guideline range of 70 to 87 months.
```

                                                                      6

```
 1             MR. WEINREB:  Well, the Government objects, your
 2   Honor.  The Government would believe it's a total -- it's a
 3   base offense level of 34.  But if the Court's finding that it's
 4   a base offense level of 32, we can proceed and the Government
 5   will make its recommendation on that basis.
 6             THE COURT:  Okay.  So I accept the recommendations
 7   of the report except that under these circumstances, I find
 8   that the amount is -- what's the range, 50 to 150?
 9             PROBATION OFFICER:  That's correct, your Honor.
10             THE COURT:  So the quantity is between 50 and 150
11   grams for a base offense level of 32.
12             PROBATION OFFICER:  That's correct.
13             THE COURT:  Less the three levels for acceptance of
14   responsibility, gives us a total offense level of 29, criminal
15   history category of 1.  And with the safety valve, we depart
16   from the mandatory minimum 10 year sentence with a range of 70
17   to 87 months.
18             MR. WEINREB:  I'm sorry.  That's based on a total
19   offense level of what?
20             THE COURT:  29.  Is that correct?
21             PROBATION OFFICER:  It's 27.
22             MR. PARIS:  Minus 2.
23             THE COURT:  What's the minus 2 for?
24             MR. PARIS:  For safety valve.  29 then down to 27.
```

AUG17SUA.txt

25          THE COURT: For what?

                                                                    7

1           MR. PARIS: The safety valve.
2           THE COURT: Oh, that's right, the safety valve.
3   27. You're right. You're right. The safety valve is not an
4   issue?
5           MR. PARIS: Right.
6           MR. WEINREB: That's correct.
7           THE COURT: So that's how we get to the 70 to 87?
8           MR. PARIS: That's right.
9           THE COURT: Okay. Mr. Weinreb, what's your
10  recommendation?
11          MR. WEINREB: Your Honor, under those
12  circumstances, the Government would recommend a sentence of 87
13  months, because the actual amount the defendant has sold is not
14  reflected in that calculation. I think both fairness and the
15  principles of sentencing uniformity would suggest the defendant
16  be sentenced according to the quantity which, under the
17  guidelines, defendants who sell like quantities of drugs would
18  also be sentenced.
19          In this case, the top of that range in which the Court
20  has found the defendant to fall in, 87 months, coincides with
21  the bottom of the range that he would otherwise had been in if
22  the Court had found that the quantity was -- if the Court had
23  found that the base offense level was 34. And therefore it
24  would be a Solomonic point at which to rest the sentence at the
25  border between those two ranges and obviating issues raised by

                                                                    8

1   Blakely.
2           I don't believe the pre -- this report reflects an
3   adequate income by the defendant to pay a fine. The Government

AUG17SUA.txt

4   is not recommending a fine. It would be a three-year term of
5   supervised release since there's no minimum mandatory and a
6   $200 special assessment.
7               THE COURT: Mr. Paris.
8               MR. PARIS: Your Honor, mind if I stand here, your
9   Honor?
10              THE COURT: Go right ahead. Wherever you want. So
11  long as you don't wander. I get sea sick if you start to
12  wander.
13              MR. PARIS: I used to do that. I don't do that
14  anymore.
15       I would ask your Honor to impose the lower level, which
16  would be 70 months, for many reasons. Mr. Suarez, he's 37
17  years old. He's from the Dominican Republic. He's had a 10th
18  grade education. Regarding the offenses in this case, your
19  Honor -- this is a case of crack cocaine. The defendant -- the
20  sale -- the defendant was never before involved in any kind of
21  sale. He had a prior possession, which was straight cocaine,
22  and that was four years before this offense. So for four years
23  nothing happens and all of a sudden an informant for the
24  Government contacts him to try to get him to sell some crack
25  cocaine, which he does on two occasions. On three occasions.

                                                                 9
1   The last sale takes place September of 2002.
2        Mr. Suarez is not even arrested until November of 2003,
3   fully almost 14 months later. I mean, not even -- an arrest
4   warrant didn't even issue until December of '02. So surely 14
5   months have passed since these offenses. He's not involved in
6   any more offenses, at least that we know about. He's not
7   arrested. And they know about him, the Government, and the
8   DEA, and he's a -- obviously been a model citizen during that

AUG17SUA.txt

9   time. Nothing happened. They know where he is, they know
10  where he lives, they know about him, yet they do nothing for 14
11  months. My point there is that he's certainly low level,
12  nothing very important, and it's just these two sales and then
13  they forgot about him for 14 months. And in those 14 months,
14  no other sales, no other arrests, no other anything.
15         And during those 14 months, Mr. Suarez, who has been in
16  a relationship with a Ms. Natalie Derosa, who is present today
17  and who, I believe, sent your Honor a letter. He was living
18  with her and was very serious with her and he started to
19  straighten out his life as far as learning the English language
20  better. You have a letter from an English-as-a-second-language
21  school showing that he went to school there for three or four
22  months, to learn English, from January '03 to, I think, in
23  March, which was after this offense. Ms. Derosa tells you that
24  they lived together and they even had his four-year-old child
25  living with them, because the mother of that child, I think, is

0                                                                    10
1   in deportation proceedings.
2          So during this time Mr. Suarez is learning English as a
3   second language, he's taking care of his four-year-old child
4   living with him and living with Ms. Derosa, and he's also
5   supporting his two children from a previous woman, who he had
6   seen for almost nine or ten years, between 1989 to 1998, where
7   he had two children. And you have letters from those two
8   children, two daughters.
9          And you can see from the letters, at least I can see
10  from the letters, that these daughters, they love him. He's a
11  wonderful, caring father. He spends all kind of time with them
12  or at least he did before he was arrested, and he supported
13  them. He sent them money. He sent the mother of those

Page 8

14    children money every week. I think $350 a week. No court
15    orders. He was just sending them money. And until he got
16    custody of his four-year-old child, he was sending the mother
17    of that child $100 a week. So he was supporting these
18    children. And then his youngest daughter came to live with
19    him.
20         Now, during this time, from September, October of 2002,
21    Mr. Suarez was employed. He was employed as a janitor. He was
22    employed as a telemarketer. He held jobs. He was getting
23    paid. He was not involved, as far as we can tell, in this drug
24    business anymore. He wanted to get his life in order. He
25    wanted to marry Ms. Derosa. They wanted to go to the Dominican

                                                                    11
1     Republic, where she is from, also, although she is a citizen
2     here. They wanted to go back to the Dominican Republic and get
3     married. They wanted to consummate that union and be with her
4     and his young child for all time.
5          As far as Mr. Suarez is concerned, when he finishes
6     whatever sentence he gets from this court, he will, more than
7     likely, be deported. He is not a citizen and he probably will
8     undergo removal proceedings pretty fast. And with a drug
9     conviction --
10              THE COURT: What is the effect of the green card?
11              MR. PARIS: Not much, your Honor, not with a drug
12    conviction. The drug conviction, he's pretty much going to be
13    removed.
14         Ms. Derosa, who is a United States citizen, has
15    expressed the opinion that she will wait for Mr. Suarez and she
16    will go to the Dominican Republic if he gets removed from this
17    country and she will marry him and she will live there, even
18    though Ms. Derosa is a woman with a good career. She was a

AUG17SUA.txt

19  loan officer at the Cambridge Trust Company until recently,
20  when she left, and now she's working at another job. So she's
21  an accomplished woman. But she's still very much in love with
22  Mr. Suarez and his child -- and all his children, and wants to
23  wait for him and go back to the Dominican Republic and stay
24  with him.
25       Um, Mr. Suarez, as you can see from the presentence

                                                                12
1   report, has, I think, nine siblings and three of his sisters
2   are here in the courtroom. Some have written you letters.
3   They're all standing by him and everyone supports him. I think
4   you even got letters from his nieces, maybe two letters, um,
5   telling you what a wonderful uncle he is and how much time he
6   spends with them. I mean, from all the letters I see from the
7   children in this case, his children and his nieces and/or
8   nephews, he's a loving man and a caring father and uncle and a
9   wonderful partner to Ms. Derosa.
10       I would think that since he only has this offense, this
11  crack cocaine, for all the time in the interim between his
12  arrest and the time that he was arrested, which was 14 months,
13  and he wasn't caught again and the DEA or no one else bothered
14  him again, and his previous offense, which was back in 1998,
15  which was just a straight possession of cocaine, if you take
16  all these factors into account, that Mr. Suarez is not the kind
17  of a person who, I believe, has spent an inordinately long time
18  in custody. He has something waiting for him when he comes
19  out. He has someone waiting for him when he comes out. He has
20  his children, who are going to grow up in the next "X" amount
21  of years, whatever your Honor says, without him, and they're
22  all very upset about it. His children are already exhibiting
23  signs of not doing well in school because they're so upset. So

AUG17SUA.txt

24  however long he's incarcerated for is how long he will be away
25  from these children in their formative years, growing up.

                                                                13
1   So I ask you, your Honor, that you come down on the side
2   of the low level, which is the 70 months, so that Mr. Suarez
3   could be out sooner than the Government would like, so that he
4   could be reunited with his partner, Natalie, and with his
5   children, and can start his life again when he will not be a
6   relatively older person.
7       Um, we have a lot of support here in the courtroom for
8   him.  His mother would have been here, but she's ill.  She's in
9   this country, but she's ill.  No one has anything but good
10  things to say about him, from the people I've spoken to and
11  from the letters that I've read.
12      So I ask for your Honor to take into account the offense
13  and the amount of the time that has elapsed since that offense,
14  before he was arrested, and even the offenses before that, to
15  try to see that Mr. Suarez is not any part of any kind of drug
16  ring, kingpin or anything like that.  He's just a low-level
17  fellow who is probably trying to make a little living to save
18  some money, to get on with his life.  But that doesn't excuse
19  it and he accepts the responsibility for what he did.  But I
20  ask you to come down to the lower level, I mean, the lower
21  parameters here at 70 months, and for those reasons.  So that
22  he can get on with his life and not to spend so much time
23  before he goes back to the Dominican Republic and starts a new
24  life, which he more than likely will have to.  That's really
25  what I have to say, your Honor.

                                                                14
1       THE COURT:  I should note that I have received

AUG17SUA.txt

2   letters from the Chaplain at Plymouth, Dave Robbins.
3   Ms. Natalie Delarosa. Innerva DeJesus, who is secretary to the
4   Office of Vacina Espana de la Communida. Is that how you say
5   it? Something like that. From Juan Vale -- Valdie. I'm
6   sorry. I'm having trouble reading some of the names. Amalia
7   Baez. And Mayra Suarez Perez.
8         Mr. Suarez, do you wish to say anything before I impose
9   sentence?
10              THE DEFENDANT: Yes, your Honor. May I stand up?
11              THE COURT: Yes.
12              THE DEFENDANT: Well, I ask -- I want to say that I
13  believe in God and I know that everything will come down to his
14  will and nothing else. Let it be God's will.
15              THE COURT: I should explain that we are, at the
16  moment, in a very difficult situation concerning sentencing
17  because of a case that the Supreme Court decided that wreaked a
18  certain amount of chaos in the whole sentencing scheme. Some
19  of my colleagues have determined that as a result of this
20  decision, all of the sentencing guidelines are
21  unconstitutional. If that is the case, then I would not be
22  bound by any of these numbers that we have talked about and I
23  would not have to impose a sentence that I frankly do regard as
24  high.
25         At the same time, I have not taken the position, I do

0                                                              15

1   not believe that the Supreme Court's decision has invalidated
2   the entire scheme. It has required certain additional
3   safeguards, as I see it, and as a result of those, I have
4   decided that the amount of the drug is 50 grams on each count
5   rather than the higher number, because I am not persuaded that
6   the higher number has been properly admitted to by the

AUG17SUA.txt

7  defendant nor obviously proven, since there was no proof at all
8  in the sense of proof beyond a reasonable doubt.
9         Having taken that position -- and I feel I am, in
10 principle, bound to adhere to a position once taken, I am then
11 bound to continue with the guidelines, albeit it at a lower
12 number, which has led me to the 70 to 87 months range. I see
13 no reason to go above the lowest end of these guidelines. It
14 is the lowest sentence that I feel I can impose, in a
15 principled way, given the position I have taken.
16        Now, it may be that the Supreme Court will, in October
17 or whenever it finally looks at this issue, again, come out
18 differently. I don't know what our choices are, at that point,
19 with respect to sentences already imposed. But at the moment,
20 I feel bound, in principle, to go with the lowest sentence that
21 I can under these rules, which is a sentence of 70 months
22 imprisonment. Obviously, Mr. Suarez, you will get credit for
23 the time that you have already served.
24        So I sentence you to a term of imprisonment of 70
25 months, a period of supervised release of three years, which is

0                                                              16
1  also the lowest possible. No fine, because there is no money.
2  However, I must impose a special assessment of $200. There are
3  conditions of supervised release that I need to explain to
4  you. One of them is that you are prohibited from possessing
5  any firearms or other dangerous weapons. That you shall
6  participate in a program of substance abuse, if so directed by
7  the probation officer, and that program may include drug
8  testing of no less than two tests, but no more than 104 tests
9  per year. If you are ordered to be deported, you shall leave
10 the United States and not return without the prior permission
11 of the Secretary of Homeland Security. You shall use your true

AUG17SUA.txt

12  name and are prohibited from using any aliases. That's it,
13  isn't it, Ms. --
14             PROBATION OFFICER: Your Honor, I would like to say
15  that with regard to the drug testing, three is the minimal
16  number, one within 15 days and two thereafter.
17             THE COURT: At least 3, no more than 104 a year.
18  At least three, period. But in any year, no more than 104.
19             You have a right to appeal from the sentence,
20  Mr. Suarez, by filing a notice of appeal. I would ask
21  Mr. Paris to file such a notice on your behalf if you choose to
22  exercise that right of appeal.
23             Mr. Marshall, the defendant is now in your custody on
24  the sentence of the Court.
25             MR. PARIS: Thank you, your Honor.

                                                              17
1              THE COURT: Thank you. I'm sorry. I have other
2  letters that had slipped between. I had read them, but I had
3  -- a letter also from Arabina Suarez, Salvania Suarez and
4  Vivian Bennett. I'm sorry. I have read them. They were not
5  in the same file as the others. The Court is in recess.
6              (Pause.)
7              MR. PARIS: Well, there's only one prison in
8  Massachusetts.
9              THE COURT: So I recommend that he be imprisoned at
10 Fort Devens or an institution as close as possible to
11 Massachusetts. That will do you no good at all. They never
12 follow my recommendations.
13             MR. PARIS: Thank you, Judge.
14             (Ends 3:00 p.m.)
15
16

AUG17SUA.txt

17
18
19
20
21
22
23
24
25

18

1            C E R T I F I C A T E
2
3
4
5
6
7    I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do
     hereby certify that the foregoing record is a true and
8    accurate transcription of my stenographic notes on
     Tuesday, August 17, 2004 before Honorable Rya W.
9    Zobel, to the best of my skill and ability.
10
11
12
13
14
15   _____
     RICHARD H. ROMANOW
16
  17
18
19
20
21
22

AUG17SUA.txt

23
24
25
□